OPINION OF THE COURT
W. Patrick Falvey, J.
Petitioner, an unincorporated association comprised of some residents of the Town of Italy brings this CPLR article 78 proceeding, challenging the enactment of Local Law No. 3 (2009) of the Town of Italy, as replaced by Local Law No. 5 (2009) of the Town of Italy, which rezoned two areas in the southern portion of the Town as wind energy incentive zones (WEIZ). Respondents Town and wind developer Ecogen moved to dismiss the petition on the ground that the petitioner lacks standing.
On the return date, respondents, in open court, withdrew their motion to dismiss. The court hereby reaffirms said withdrawal and denies said motion based on the petitioner’s affidavits in support of standing proving that at least one of its members owns land within one of the WEIZ.
*1117 Petitioner asserts the following grounds in its petition:
“1. The Town violated the State Environmental Quality Review Act (SEQRA) by making an impermissible deferral of impact review. Petitioner refers to 6 NYCRR § 617.3(g), which requires that all of the set of activities or steps that make up an action must be considered by the agency. Petitioner accuses the Town of segmenting its consideration, by deferring to the future, consideration of serious environmental issues.
“2. The Town violated SEQRA by failing to mitigate identified impacts. 6 NYCRR § 617.2(x), ECL § 8-0109(1) and (8), and 6 NYCRR § 617.11(d) . The mitigating measures must be reasonably related to the impacts identified in the Environmental Impact Statement (EIS). 6 NYCRR § 617.3(b). There is no authority under SEQRA for substituting ‘incentives’ that would ‘offset’ adverse impacts.
“3. The Town violated the Open Meetings Law, Public Officers Law (POL) §§ 104(1) and 107(1). Public notice of a meeting must be given at least one week in advance of a meeting. POL § 104(1). Petitioner asserts that the Town held a special meeting January 30, 2009, without public notice. At that meeting the board decided to fly two of its members and the Town’s engineer to Texas to see wind turbines in operation.
“4. The Town violated the Open Meetings Law on February 7 or 8, 2009, when three town board members met at a wind farm in Cohocton to assess wind farm noise levels. There was no prior public notice of such meeting.
“5. The Town failed to prepare minutes of the February 7 or 8, 2009 meeting. POL § 106(1).”
Petitioner, in reply to the Town’s answer, moves to strike certain of Ecogen’s submissions from the record, including the 2005 findings statement, the 2005 final generic environmental impact statement (FGEIS) and draft generic environmental impact statement (DGEIS), all prepared by the Steuben County Industrial Development Agency (SCIDA) in regard to a wind farm in adjoining Steuben County. (See Ecogen binders 1, 2, 3, 4 and portions of 5, and volumes submitted with July 14, 2009 *1118 Monforte letter to the court.)* The Town takes no position on petitioner’s motion to strike these materials.
The court concludes that these materials should be included in the record before the court. The Town’s June 2008 DGEIS refers to the SCIDA DGEIS and FGEIS (cf. record at 159, 260). The Town’s December 2008 FGEIS does so as well. (Id. at 684-685.) Both the Town’s DGEIS and FGEIS incorporate the SCIDA DGEIS and FGEIS by reference. While the Town took pains to distinguish its own environmental review and conclusions reached therefrom from those of SCIDA, the SCIDA review certainly informed the Town’s own environmental review and therefore, is included in the record herein.
Petitioner also moves to strike certain other materials submitted by Ecogen, because they are a part of the certified record submitted by the Town (i.e., Italy Board minutes of the Feb. 12, 2008 meeting; cf. record at 13-18; Italy June 2008 draft GEIS; cf. record at 152-324; Italy Dec. 2, 2008 final GEIS; cf. record at 661-955; Italy’s Feb. 10, 2009 findings statement; cf. record at 1081-1093; Local Law No. 3 [2009] of Town of Italy; cf. record at 1094-1114; Local Law No. 5 [2009] of Town of Italy; cf. record at 1140-1161). At oral argument, the respondents agreed that these materials as submitted by Ecogen are redundant of the certified record, and the court agrees. Therefore, these items, as submitted by Ecogen, are stricken from the record. (See Ecogen binder 5, exhibits 3, 4, 5, 6, 7 and 8 but note exhibit 7 is missing from copy provided to the court.)
Petitioner, in its reply to the Town’s answer, also submits an acoustical engineer’s affidavit (James affidavit). Some of the writings of this engineer were submitted by petitioner’s member Sawicki, as part of the public comment proceedings during the SEQRA review. Petitioner submits a July 15, 2009 affidavit of Sawicki, and attaches a full copy of an article cowritten by James that Sawicki submitted to the Town. (Kamperman and James, The “How To” Guide to Siting Wind Turbines to Prevent Health Risks From Sound [2008].)
*1119 Respondent Ecogen, joined by the Town, cross-moves to strike the James affidavit from the record, and from consideration by the court. Ecogen does concede that the material attached to the Sawicki affidavit may be included in the record, since only a summary is included in the record (record at 1174-1183, 1416-1417), but the court should give it little probative weight, since Sawicki only generally referenced the documents and did not explain how they should be used by the Town in its SEQRA review. (See record 825.)
The court agrees with the respondents that the James affidavit should not be considered by the court in this article 78 proceeding. It amounts to additional evidence, outside the record of the proceedings this court is called upon to review. However, as respondents concede, the material that Sawicki submitted to the Town, written by James and Kamperman, which appears as an attachment to the July 15, 2009 Sawicki affidavit, should be considered part of the record, as it was timely provided to the Town by Sawicki during a public comment period. The record is hereby amended to include this article.
The Town answers each allegation in the petition, and as affirmative defenses, along with the assertion of lack of standing, claims:
“1. To the extent the petition contains claims, arguments and proof that were not submitted to the Town Board during the review process, they are irrelevant to this proceeding and cannot be used to overturn the Board’s actions and are irrelevant to the issue of whether the Town complied with SEQRA.
“2. The record establishes that the Town Board, as lead agency, conducted a careful, thorough and complete review of the relevant areas of environmental concern, took the required hard look and provided a written and reasoned elaboration for its determination to enact the Wind Energy Incentive Law.”
In response to the open meetings claims, the Town provides an affidavit of its Town Clerk stating that the January 30, 2009 meeting was not scheduled until after the January 27, 2009 special meeting, when the Town received an offer from Babcock & Brown, a wind developer, apparently associated with Ecogen, to view and observe an operational wind energy facility in Texas.
*1120 The Board determined it needed time to discuss the proposal and so on January 27, 2009, after the special meeting, scheduled the January 30, 2009 meeting. There was no time to publish a notice in the newspapers, so the Clerk posted the notice on the front window of the Town hall, the normal posting place for Town notices.
As for the February 7 or 8, 2009 outing to view the Cohocton wind farm, the Town asserts, this was not a meeting requiring notice. The outing was discussed during the January 27, 2009 meeting (record at 1562-1564). Board member, Charles Kreuzer’s affidavit notes that he drove to Cohocton on his own, and the three board members did not discuss the proposed law while studying the noise. The Town engineer was also present to measure noise levels. The three board members did not share their observations about the wind farm until the February 10, 2009 meeting (record 1075-1076). The Board took no action during the outing.
Ecogen answers the petition, and asserts as affirmative defenses that (1) the petition fails to state a cause of action, (2) petitioner lacks standing, (3) petitioner failed to exhaust its administrative remedies, (4) the Town’s actions are supported by substantial evidence and (5) the Town complied with the Open Meetings Law.
Turning to the open meetings allegations of petitioner, the court concludes that the petitioner is not entitled to any relief. The February 7 or 8, 2009 outing was not a meeting. It was not an official convening of a public body for the purpose of conducting public business. (Public Officers Law § 102 [1].) The uncontroverted affidavits submitted by the Town show that the three board members did not discuss their observations while they were present in Cohocton, but waited until the next public meeting to share their observations. Therefore, since the outing was not a meeting, there was no need to prepare minutes.
Furthermore, the Town did not violate the Open Meetings Law regarding notice of the January 30, 2009 meeting, since the meeting was scheduled less than one week in advance of the date it was to be held. There was no time for the meeting to be noticed in a newspaper. The Town Clerk took reasonable steps to post notice of the meeting on the Town hall where meeting notices are always posted. Thus the Town complied with Public Officers Law § 104.
The court concludes that the Town did not engage in impermissible segmentation of its SEQRA review. “Actions com *1121 monly consist of a set of activities or steps. The entire set of activities or steps must be considered the action, whether the agency decision-making relates to the action as a whole or to only a part of it.” (6 NYCRR 617.3 [g].) Here, the action by the Town was the enactment of a local zoning law, establishing wind energy incentive zones in specific geographic areas of the Town. Consideration of a specific wind developer’s application for a special use permit under this local law is a separate action from the action of enactment of a local zoning law. The Town was therefore not required to consider the specifics of potential permit applications during its SEQRA review for enactment of the local zoning law.
The Town followed the requirements of Town Law § 261-b (3) (d), which requires preparation of a generic environmental impact statement (GEIS) under 6 NYCRR 617.15 before an incentive zone may be designated. The GEIS is also appropriate when a zoning law is being amended or created. (6 NYCRR 617.10 [a] [4]; see Matter of Eadie v Town Bd. of Town of N. Greenbush, 7 NY3d 306 [2006].)
The last issue for the court’s determination is whether or not the Town violated SEQRA by failing to adequately mitigate identified adverse impacts that will be occasioned by the presence of industrial wind turbines in the newly created WEIZ. Specifically, did the Town impermissibly substitute “incentives” for mitigation of adverse environmental impacts identified by the Town in its SEQRA review, especially the impact of increased noise?
The use of incentive zoning in the formulation of land use policies for wind farms is novel, and this court could find no published cases regarding it. The Town reasons that because wind farms will have substantial adverse impacts on the Town, including noise, shadow flicker and visual aesthetic degradation, some of which cannot be fully or adequately mitigated, the Town should seek benefits from wind developers in exchange for allowing the siting of these farms in the Town of Italy. The petitioner asserts that SEQRA does not allow for such substitution of incentives in lieu of mitigating adverse impact to the fullest extent possible. For example, the petitioner would like much larger setbacks from property lines and residences to mitigate noise impacts than the Town has provided in the local law
In determining an article 78 petition regarding SEQRA, a court must limit its inquiry to determine whether the Town’s determination was made in violation of lawful procedure, was
*1122 affected by an error of law, or was arbitrary or capricious. (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400 [1986].) The Town’s task in conducting the SEQRA review was to incorporate into its planning and decision-making processes, which resulted in the passage of its WEIZ legislation, a suitable balance of the existing and potential social, economic and environmental factors. (6 NYCRR 617.1 [d].)
“Not every conceivable environmental impact, mitigating measure or alternative must be identified and addressed before a FEIS will satisfy the substantive requirements of SEQRA.” (Aldrich v Pattison, 107 AD2d 258, 266 [2d Dept 1985].)
“[T]he Legislature in SEQRA has left the agencies with considerable latitude in evaluating environmental effects and choosing among alternatives (see, e.g., ECL 8-0109 [8]). Nothing in the law requires an agency to reach a particular result on any issue, or permits the courts to second-guess the agency’s choice, which can be annulled only if arbitrary, capricious or unsupported by substantial evidence.” (67 NY2d at 417.)
“Dissatisfaction with an agency’s proposed mitigation measures is not redressable by the. courts so long as those measures have a rational basis in the record.” (Jackson at 421.) “SEQRA requires an agency ‘to list ways in which any adverse effects . . . might be minimized’ (ECL 8-0109 [2]), but it does not require an agency to impose every conceivable mitigation measure, or any particular one.” (Jackson at 421-422.)
ECL 8-0109 (8) requires mitigation of adverse environmental impacts to the maximum extent practicable, consistent with social, economic and other essential considerations.
Here, the court concludes that the Town has not violated SEQRA in the enactment of Local Law No. 5 of 2009. The Town followed the appropriate procedure by doing a full DGEIS, GEIS, and findings statement, and by holding numerous meetings and appropriate public hearings on the Wind Incentive Zoning Law. The Town’s actions were not arbitrary, capricious or unsupported by substantial evidence. The Town identified the relevant areas of concern, including noise, aesthetics, ice throw, decommissioning, and bird/bat kill. It also educated itself on the ramifications of the proposed legislation; considered different courses of action; and chose the course of action which it determined balanced the existing and potential social, economic and environmental factors. (6 NYCRR 617.1 [d].)
*1123 The Town was not required to mitigate noise to the greatest extent possible. The Town did seek to mitigate the adverse impact of noise by limiting noise to LAeq of 50 dBA or 5 dBA increase in LAeq, whichever is larger, at nonparticipating property lines. (Local Law No. 5; record at 1155.) Additionally, the Town requires an LAeq 45 dBA or less at the closest residence on nonparticipating properties. Further, if a pure tone is produced, then there must be a further reduction by 5 dBA. Additionally, the Law requires a 1,000-foot setback to the property line of a nonparticipating parcel, and at least 1,375 feet from a nonparticipating residence. (Record at 1156.) These mitigation measures have a rational basis supported by the record. (See FGEIS, record at 753-760; FGEIS appendix C, record at 825-826.)
As the Court of Appeals notes in Jackson, SEQRA does not require the Town to “impose every conceivable mitigation measure, or any particular one.” (67 NY2d at 421-422.) And, it does not strike this court as arbitrary and capricious, or an abuse of discretion to employ incentive zoning as a way to strike a balance between environmental concerns, as pointed up in the SEQRA review, and social, economic, and other concerns of the Town.
The petition is dismissed, on the merits.

 At the time the SCIDA SEQRA proceedings were initiated, the Town of Italy had no zoning laws, and wind developers were looking at both the Steuben County area and Italy in Yates County for development of wind energy. SCIDA incorporated the impact of wind energy development in the Town of Italy into its environmental review process. Ecogen asserts that these SCIDA records were considered and made a part of the Town of Italy’s SEQRA proceedings, by reference, and so seeks to include them in the record in this article 78 proceeding.